UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DANIEL MOORE,                                               :
                                        Plaintiff,          :
                                                            :        17 Civ. 0211 (LGS)
                          v.                                :
                                                            :        **OPINION AND ORDER**
THOMSON REUTERS (GRC) INC.,                                 :
                                        Defendant.          :
                                                            :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__09/14/2017__

LORNA G. SCHOFIELD, District Judge:

Plaintiff Daniel Moore sues Defendant Thomson Reuters Inc. for breach of contract and

fraud and deceit under New York law.[1]  Defendant moves to dismiss under Federal Rule of Civil

Procedure 12(c).  Plaintiff cross-moves to amend the Complaint.  For the reasons below,

Defendant's motion to dismiss is granted, and Plaintiff's cross-motion to amend the Complaint is

denied.

I.      **BACKGROUND**

The facts that follow are drawn from the Complaint and documents that are integral to the

Complaint.  They are construed in the light most favorable to Plaintiff, as the non-moving party.

*See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

Beginning in or around June 2010, Plaintiff was Senior Vice President-Sales for Pricing

Partners SAS ("Pricing Partners") in its United Kingdom office.  Pricing Partners was "a

developer and provider of over-the-counter derivative pricing analytics software," whose

---

[1] In response to Defendant's motion, Plaintiff voluntarily withdrew his claims for breach of the
implied covenant of good faith and fair dealing, intentional infliction of emotional distress and
negligent infliction of emotional distress.

products included "Price-it Online," "Price-it Excel" and "Price-it Source Code."  Defendant

acquired Pricing Partners in 2013.

After Defendant acquired Pricing Partners, Plaintiff and Defendant began discussing

Plaintiff's becoming a Sales Specialist and relocating with his family to New York.

Defendant told Plaintiff that "if he stayed in the United Kingdom, his tenure with Defendant

might be in jeopardy" and that if he did not transfer, "he may no longer have a position with

Thomson Reuters."

On April 16, 2014, Defendant sent a written offer of employment (the "Offer Letter") to

Plaintiff to become a Sales Specialist in New York.  The terms of the Offer Letter included,

among other things, Plaintiff's compensation and benefits.  The Offer Letter, signed by Sales

Special Manager, Enterprise Content, Scott Kaffl, stated:

> While I have every expectation that you will continue to have a successful career with us, I must remind you that your employment with The Company is on an "at will" basis, which means that either of us may choose to terminate your employment at any time, with or without cause, with or without notice and without compensation except for time worked.  Accordingly, nothing in this offer letter should be construed as creating a contract of employment, or employment for a specified term.  Please note that participation in the Annual Incentive Plan/Stock Option Plan does not guarantee any future participation, which is at The Company's discretion.  Also, of course, all compensation, benefits and other terms of employment are subject to change from time to time, as *The Company* determines.  (Emphasis in original.)

In addition, the Offer Letter included the following disclaimer:

> The undersigned accepts the above employment offer and agrees that it contains the terms of employment with The Company, that the employment offered is "at will" as described above, that this offer supersedes any and all prior understandings, offers or agreements, whether oral or written, and that there are no other terms expressed, or implied.  *The undersigned also understands that no representation, whether oral or written, by any manager, supervisor, or representative of The Company, at any time, can constitute a contract of employment or employment for any specific duration, other than a document signed by the Human Resources Director.*  (Emphasis in original.)

During Plaintiff's employment negotiations, Dr. Eric Ben-Hamou (who became Thomson Reuter's Director of Innovation after the acquisition) "represented to Plaintiff in a face-to-face meeting that accepting the Offer would be a positive step in Plaintiff's career" and "exerted pressure on Plaintiff to accept the transfer." Scott Kaffl "represented that Plaintiff would act as a consultant for Defendant during the last quarter of 2014 and that he would become a Sales Specialist . . . in 2015." The Complaint also alleges that "Defendant" made the following representations to Plaintiff:

1. "that it would take all steps necessary to support the products that Plaintiff would be trying to sell";

2. "that Plaintiff would be the only Thomson Reuters representative in the United States . . . selling those products"; and

3. "that Plaintiff would . . . earn uncapped commissions."

The Complaint does not identify who made these statements, or describe where or when they were made. Plaintiff accepted Defendant's offer and relocated to New York.

While Plaintiff was working for Defendant in New York, he "recognized that Defendant was not supporting the products that the company was selling." Plaintiff was told that "the products were not yet supported" and that "Plaintiff would not be able to achieve his quota and, therefore, should remain a consultant." Plaintiff remained a consultant in 2015 and 2016 until he "voluntarily ended his employment with Defendant on September 12, 2016."

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed -- but early enough not to delay trial." "We apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the

nonmoving party." *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *see also Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015). On a motion to dismiss for breach of contract, courts consider not only the sufficiency of the complaint, but the contract, which by definition is integral to the complaint. *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (in an action involving breach of contract, noting that "[w]here . . . certain contracts are integral to the complaint, we also consider those documents in deciding the merits of the motion"). Courts "are not obliged to accept the allegations of the complaint as to how to construe [the contract], but at this procedural stage, we should resolve any contractual ambiguities in favor of the plaintiff." *Subaru Distribs.*, 425 F.3d at 122. Where the relevant contract provisions are unambiguous and plaintiff has no claim under them, the claim should be dismissed. *See, e.g.*, *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 69 (2d Cir. 2014) (affirming dismissal of contract claims where relevant provision was unambiguous).

New York law applies as the parties assume that it does. "The parties' briefs assume that [New York] state law governs this case, and 'such implied consent is . . . sufficient to establish

the applicable choice of law.'" *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017)

(quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

## III.  DISCUSSION

### A.  Breach of Contract

The Complaint alleges that the Offer Letter constitutes a binding and enforceable

agreement that "Defendant failed and, in fact, refused to perform pursuant to the parties'

agreement and, accordingly, materially breached said agreement."  For the reasons that follow,

the breach of contract claim is dismissed.

To state a claim for breach of contract under New York law, Plaintiff must allege: "(i) the

formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of

defendant to perform; and (iv) damages."  *Orlander v. Staples, Inc*., 802 F.3d 289, 294 (2d Cir.

2015) (internal quotation marks omitted); *accord El-Nahal v. FA Mgt.*, 5 N.Y.S.3d 201, 202 (2d

Dep't 2015).  To establish the existence of a contract, Plaintiff must show that there was "an

offer, acceptance, consideration, mutual assent and intent to be bound."  *Leibowitz v. Cornell

Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) (internal quotation marks omitted), *superseded by

statute on other grounds* (applying New York law).

Here, the contract claim fails because, by its express terms, the Offer Letter is not a

binding and enforceable contract.  The Offer Letter includes two disclaimers stating that

"nothing in this offer letter should be construed as creating a contract of employment" and "no

representation . . . can constitute a contract of employment . . . other than a document signed by

the Human Resources Director."  The Offer Letter also states that "all . . . terms of employment

are subject to change . . . as *The Company* determines," "this offer supersedes any and all prior

understandings, offers or agreements, whether oral or written" and "there are no other terms

expressed, or implied."  Because Plaintiff's interpretation of the Offer Letter as constituting a binding and enforceable contract is directly contradicted by the Offer Letter's express terms, it cannot form the basis of Plaintiff's breach of contract claim.  *See Twomey v. Quad/Graphics, Inc.*, No. 13 Civ. 1109, 2015 WL 5698002, at *12, *14 (S.D.N.Y. Sept. 28, 2015) (granting summary judgment as to breach of contract claim based on New York law because no reasonable juror could find that the offer letter constituted an enforceable contract where it included a disclaimer stating "do not construe this offer as an employment contract"); *Barker v. Time Warner Cable, Inc.*, No. 016438/08, 2009 WL 1957740, at *4 (N.Y. Sup. Ct. July 1, 2009) (rejecting argument that offer letter constituted a binding agreement where it "plainly stated" that it was "not a contract of employment or a guarantee of employment or compensation"), *aff'd*, 923 N.Y.S.2d 118 (2d Dep't 2011).

Even assuming the existence of a contract and construing the alleged facts in Plaintiff's favor, the breach of contract claim fails.  First, the Complaint does not identify any specific provision that Defendant allegedly materially breached.  Second, Plaintiff was an at-will employee who chose to remain an employee of Defendant after learning of the changes to the terms of his employment.  Plaintiff is therefore deemed to have acquiesced to those changes by remaining in Defendant's employ until September 12, 2016.  *See Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 32–33 (S.D.N.Y. 2010) (applying New York law: "If an employer changes the terms of its employee's at-will employment contract and the employee chooses to remain in the employer's employ after being advised of that change, the employee is deemed to have acquiesced to the new terms of employment and cannot later claim compensation based on the terms of the original contract.") (internal quotation marks omitted); *Jennings v. Huntington Crescent Club*, 993 N.Y.S.2d 139, 140 (2d Dep't 2014) ("[T]he plaintiff's allegations reflect that

he ratified the actions of which he now complains by choosing to remain in the defendants' employ."). The breach of contract claim is dismissed.

## B. Fraud and Deceit

The Complaint alleges that Defendant is liable for fraud and deceit based on alleged misrepresentations that Defendant's employees made to Plaintiff during his employment negotiations. *See Laduzinski v. Alvarez & Marsal Taxand LLC*, 16 N.Y.S.3d 229, 230 (1st Dep't 2016) (finding that plaintiff's at-will status did not preclude his fraudulent inducement claim where he "pleaded an injury separate and distinct from his termination"). This claim fails because Plaintiff fails to allege sufficient facts to state a claim for fraud.[2]

To state a claim for fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (applying New York law); *accord Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1163 (N.Y. 2017).

A plaintiff also must satisfy the heightened pleading standard in Federal Rule of Civil Procedure 9(b). First, "the complaint must (1) detail the statements . . . that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements . . . were made, and (4) explain why the statements . . . are fraudulent." *Loreley*, 797 F.3d at 171 (internal

---

[2] To the extent the Complaint's allegations sound more in fraudulent inducement than fraud, the Complaint fails to allege sufficient facts to state a claim for fraudulent inducement for substantially the same reasons described herein. "Fraudulent inducement claims under New York law are similar [to fraud claims]: 'the defendant must have made a misrepresentation of a material fact, that was known to be false and intended to be relied on when made, and that the plaintiff justifiably relied on that misrepresentation to its injury.'" *Lankau v. Luxoft Holding, Inc.*, No. 16 Civ. 8690, 2017 WL 2954763, at *4 (S.D.N.Y. July 10, 2017) (quoting *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009)).

quotation marks omitted). Second, the complaint must "allege facts that give rise to a strong inference of fraudulent intent." *Id.* (internal quotation marks omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006); *accord Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13 Civ. 6935, 2015 WL 4743542, at *6 (S.D.N.Y. Aug. 11, 2015).

The Complaint alleges six material misrepresentations of fact:

1. During the negotiation process, Pricing Partners' Chief Executive Officer, Dr. Eric Ben-Hamou, represented to Plaintiff in a face-to-face meeting that accepting Defendants' Offer would be a positive step in Plaintiff's career.

2. During the negotiation process, Defendant's representatives met with Plaintiff on a weekly basis and misrepresented the advisability of Plaintiff accepting the transfer to New York.

3. During the negotiation process, Defendant's Sales Specialist Manager, Enterprise Content, Scott Kaffl, misrepresented to Plaintiff that he would become a Sales Specialist per the Offer beginning in 2015.

4. Before Plaintiff accepted Defendant's Offer, Defendant misrepresented that it would take all steps necessary to support the products that Plaintiff would be trying to sell . . . when in fact, it was not capable of doing so in the United States.

5. Before Plaintiff accepted Defendant's Offer, Defendant misrepresented that Plaintiff would be the only Thomson Reuters representative in the United States who would be selling those products.

6. Before Plaintiff accepted Defendant's Offer, Defendant misrepresented that Plaintiff would be able to earn uncapped commissions for all of the deals that he closed.

None of the alleged misrepresentations is pleaded with sufficient specificity to state a claim for fraud under New York law. Four of the six (Nos. 2, 4, 5 and 6) are insufficient because they fail to identify any speaker, attributing the statement only to "Defendant" or "Defendant's representatives." *See, e.g.*, *Riker v. Premier Capital, LLC*, No. 15 Civ. 8293, 2016 WL 5334980,

at *5–*6 (S.D.N.Y. Sept. 22, 2016) (rejecting fraud claim based on failure to satisfy Rule 9(b) where defendant "[did] not sufficiently identify an individual speaker" and failed to allege "the 'where and when' of the statements").  All six of the alleged misrepresentations fail to state where and when the statement was made, pleading only that it was made "[d]uring the negotiation process" or "[b]efore Plaintiff accepted Defendant's Offer."  These facts are insufficient to meet Rule 9(b)'s heightened pleading standard.  *See id.*  Plaintiff's providing additional details in his Opposition is insufficient as "Rule 9(b) mandates *pleading* these circumstances."  *Id.* at *6 (emphasis in original) (rejecting argument that plaintiff can meet Rule 9(b)'s heightened pleading standard by supplying the missing information during discovery).  Although an amended pleading might cure these defects, nothing in Plaintiff's Opposition suggests that he can cure the defects discussed below.

Defendant's alleged misrepresentations that "accepting Defendant's Offer would be a positive step in Plaintiff's career" (No. 1) and that it was "advisab[le]" for Plaintiff to accept the transfer to New York (No. 2) are not actionable.  *See Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 323 (S.D.N.Y. 2012) (dismissing fraud claim, in part, because plaintiff failed to allege sufficient facts that defendants knew or should have known that their "statements of subjective opinion" were false) (citing *Int'l Fin. Corp. v. Carrera Holdings Inc.*, 920 N.Y.S.2d 310, 310–11 (1st Dep't 2011) (holding that plaintiffs' alleged misstatements were "expressions of hope and opinion," and therefore could not support a counterclaim for fraudulent inducement).

Defendants' alleged misrepresentations that Plaintiff would become a sales manager in 2015; that Defendant would take all necessary steps to support the products Plaintiff expected to sell; that Plaintiff would be the only Thomson Reuters representative in the United States; and that Plaintiff would be able to earn uncapped commissions (Nos. 3–6) are likewise not actionable

as fraud.  These statements are not, as the Complaint alleges, material false representations of an existing fact; rather, they are opinions or predictions about Plaintiff's future at Thomson Reuters, which cannot state a claim for fraud under New York law.  *See Lombardi v. Lombardi*, 7 N.Y.S.3d 447, 450 (2d Dep't 2015) (finding that the alleged misrepresentations "were merely representation[s] of opinion or a prediction of something which is hoped or expected to occur in the future, which cannot not sustain a fraud claim") (internal quotation marks omitted and alteration in original).  Even assuming these statements were promises of future action, such promises "give[] rise only to a breach of contract cause of action."  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir 2007).  The Offer Letter contains an integration clause that negates any such claim, stating that "this offer supersedes . . . all prior understandings" and "that there are no other terms."  *See Broyles v. J.P. Morgan Chase & Co.*, No. 08 Civ. 3391, 2010 WL 815123, at *4 (S.D.N.Y. Mar. 8, 2010) (applying New York law and dismissing plaintiff's breach of contract claims where a valid offer letter stated that its terms constituted "the entire understanding of the parties with respect to the terms and conditions of the offer of employment and supersede [ ] any prior verbal or written communication") (alteration in original).

The Complaint also fails to plead any facts that "give rise to a strong inference of fraudulent intent."  *Walia*, 2015 WL 4743542, at *6 (quoting *Berman v. Morgan Keenan & Co.*, 455 F. App'x 92, 95 (2d Cir. Jan. 19, 2012) (summary order)).  The Complaint contains only conclusory allegations that Defendant either knew the alleged misrepresentations were false, or acted recklessly without regard to whether they were false.  Although the allegation that Defendants wanted "to induce Plaintiff to . . . accept[] employment as a Sales Specialist in . . . New York" could be suggestive of Defendant's motive, it does not give rise to a strong inference

of fraud, particularly as the Complaint describes Defendant's forthright statements that "if [Plaintiff] stayed in the United Kingdom, his tenure with Defendant might be in jeopardy" and that if he did not transfer, "he may no longer have a position with Thomson Reuters."

### C. Plaintiff's Cross-Motion to Amend the Complaint

Plaintiff may amend the Complaint only with leave of court or on consent as the Answer was filed in April 2017.  *See* Fed. R. Civ. P. 15(a).  "The court should freely give leave when justice so requires," *id*., but "[l]eave to amend may properly be denied if the amendment would be futile . . . .  A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss," *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (internal quotation marks and citation omitted).  Plaintiff's cross-motion to file the proposed Amended Complaint is denied as futile because the proposed changes and additions would not cure all of the deficiencies described above.  *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 246, 252 (2d Cir. 2017) (affirming denial of motion to amend as futile).

First, the Amended Complaint fails to cure the defect in the breach of contract claim because, as discussed above, the Offer Letter does not constitute a binding and enforceable contract between the parties.  Second, the Amended Complaint does not cure the deficiencies of the fraud-related claims.  Defendant's alleged misrepresentations that relocation would be a "great opportunity" and in Plaintiff's "best interest" are non-actionable statements of subjective opinion.  *See Int'l Fin. Corp.*, 920 N.Y.S.2d at 310–11.  Defendant's alleged misrepresentations that Plaintiff would become a sales specialist and that Plaintiff would earn uncapped commissions are non-actionable because, as explained above, they are predictions about Plaintiff's future at Thomson Reuters -- not material false representations of existing fact. *Lombardi*, 7 N.Y.S.3d at 450; *see also Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F. Supp. 2d

265, 279 (S.D.N.Y. 2001) ("For there to be a fraud claim, there must be more than a conclusory allegation that the defendant had no intention to perform a promise of future action."); *accord H. & L. Elec. Inc. v. Midtown Equities LLC*, --- N.Y.S.3d ----, 2017 WL 2800911, at *1 (1st Dep't June 29, 2017).

The alleged misrepresentations (i) that Defendant "would be able to and would, in fact, support" the products that Plaintiff expected to sell, (ii) that Plaintiff would be the only employee selling those products, (iii) that Plaintiff would earn uncapped commissions and (iv) that Plaintiff would be a Sales Specialist also are insufficient to state a claim. These alleged misstatements are not misstatements of *existing* fact, but rather promissory statements as to what will occur in the future. As discussed above, they are actionable, if at all, only in contract. They are not actionable here because of the integration clause in the Offer Letter. *See Broyles*, 2010 WL 815123, at *4.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings is GRANTED, and Plaintiff's cross-motion to amend the Complaint is DENIED. The Clerk of Court is directed to close the motions at Docket Nos. 23 and 34 and close the case.

Dated:  September 13, 2017
  New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**